THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOHN J. DEMPSEY, Appellant.

Second Department, December 7, 1917.

Public Service Commissions Law — modification of order of **Public Service Commission** — evidence as to method of modification — criminal prosecution of employee for violation of order — intent or knowledge immaterial — necessity for service of order on defendant — mere employee not liable for violation of order.

It was the intention of the Legislature that an order of the Public Service Commission should be without force or legal effect unless formally adopted and promulgated, and such an order can only be legally modified by a formal order of the Commission, especially where the original order so provides.

Hence, in a criminal proceeding for a violation of such order instituted and prosecuted by indictment, evidence that it was customary for the Commission to modify and abrogate its orders informally, by failure to enforce their provisions, is incompetent and immaterial.

In such a proceeding it is not necessary that a copy of the order should have been served on the defendant, even conceding that the statute requires such service, where he had knowledge of its contents.

Violation of an order of the Public Service Commission constitutes a misdemeanor under the provisions of the statute, irrespective of the intent or knowledge of the violator.

Evidence examined, and *held*, insufficient to require the court to hold, as a matter of law, that the Commission made a subsequent general order which had the legal effect of abrogating or repealing a former order, because of the physical impossibility of complying with the requirements of both.

Under the provisions of subdivision 2 of section 56 of the Public Service Commissions Law, providing that " Every officer and agent of any such common carrier or corporation who shall violate * * * or who shall fail to obey, observe and comply with any order of the Commission * * * shall be guilty of a misdemeanor," an employee charged with the operation of trains under the direction of the vice-president and general manager of the company, who gave him his instructions, may not be convicted for the violation of an order of the Public Service Commission, because the vice-president and general manager is the " officer and agent " within the meaning of the statute.

APPEAL by the defendant, John J. Dempsey, from a judgment of the County Court of Kings county, entered in the office of the clerk of said county on the 13th day of February, 1917, convicting him of a misdemeanor and sentencing him to pay a fine of $500.

*D. A. Marsh* [*George D. Yeomans* with him on the brief], for the appellant.

*Ralph E. Hemstreet*, Assistant District Attorney [*Hersey Egginton*, Acting District Attorney, with him on the brief], for the respondent.

RICH, J.:

The defendant appeals from a judgment of the County Court of Kings county convicting him of a misdemeanor in having failed to comply with a final order of the Public Service Commission, and for procuring, aiding and abetting a corporation common carrier (the New York Consolidated Railroad Company) in its failure to obey and comply with the provisions thereof.

The order required the Brooklyn Union Elevated Railroad Company " to stop all its ' Fulton Street Expresses ' at

the Third Street station on its Fifth Avenue Elevated Line, and to permit passengers to board and alight from said trains at said station."

It was made on February 6, 1912, and by its terms was to take effect on the twelfth day of February following, and continue in force until changed or abrogated by further order of the Commission.

The railroad company was further required to notify the Commission on or before the 7th of February, 1912, whether the terms of the order were accepted and would be obeyed.

The defendant was the superintendent of the company at the time the order was made, and continued in the employ of its successor as its superintendent of transportation, though he was never an officer of the company.

The order was never served upon the appellant, though he knew of it. On February thirteenth the defendant wrote a letter to the vice-president and general manager of the company (Calderwood), and from whom he received his orders and under whose immediate direction he acted, in which he said: " Referring to order from the Public Service Commission in regard to express trains operating between 65th Street and Third Avenue on Fulton Street, making station stop at Third Street during the morning rush hours. The evidence given at the hearing only covered that period between 8:00 A. M. and 9:00 A. M. It is also my understanding that there was no complaint regarding other hours. I think possibly it was an error in having this order cover the entire morning rush hour period." Subsequently, at Calderwood's request, the Commission extended the time of the taking effect of the order to February 21, 1912, at which time it became operative, and was never thereafter formally modified or changed.

Calderwood informed the appellant that he had applied for a modification of the order and a limitation of its requirements to the hour between eight and nine o'clock A. M., and two days later directed the stopping of all Fulton street expresses between those hours, and the defendant obeyed his orders.

Thereafter, for more than three years, all such express trains were stopped at said station between eight and nine

o'clock in the forenoon, but none of them were stopped between seven and eight o'clock, or at any other hour of the day.

It appears that frequently during said three years inspectors of the Commission investigated the manner in which the Fulton street express trains were being operated, checked their stopping at the Third street station. No objection was made by the Commission or any of its inspectors to such operation, and the appellant had no notice that such method of operation was not a compliance with the said order; no proceeding was taken to enforce compliance therewith. It is true that the appellant was never notified by Calderwood or any other person that the order had been modified or changed in any respect, and while he made no effort to ascertain from the Commission whether a subsequent modifying or limiting order had been made, he testified that he supposed from his instruction from Calderwood to have the expresses stopped between eight and nine o'clock forenoons, and the failure of the Commission or its inspectors, with knowledge of the manner in which he was operating such express trains, to object or to advise him that he was not complying with the requirements of the order, that it had been so modified and limited as to be operative only between eight and nine o'clock in the morning, and that he acted in accordance with. that supposition, and with no intention of violating or disobeying any of its requirements; that he believed that he was complying with the requirements of the order, and did not ascertain to the contrary until in May, 1915, when this prosecution was instituted.

Section 56 of the Public Service Commissions Law (Consol. Laws, chap. 48; Laws of 1910, chap. 480) provides: " 1. Every common carrier, railroad corporation and street railroad corporation and all officers, and agents of any common carrier, railroad corporation or street railroad corporation shall obey, observe and comply with every order made by the Commission, under authority of this chapter so long as the same shall be and remain in force.   *   *   *

" 2. Every officer and agent of any such common carrier or corporation who shall violate, or who procures, aids or abets any violation by any such common carrier or corporation of, any provision of this chapter, or who shall fail to obey, observe

and comply with any order of the Commission or any provision of an order of the Commission, or who procures, aids or abets any such common carrier or corporation in its failure to obey, observe and comply with any such order or provision, shall be guilty of a misdemeanor."

The indictment is based on the 2d subdivision, and alleges that "The defendant on the 19th day of May, 1915, in the County of Kings, being an agent of the New York Consolidated Railroad Company (which company is the successor and has acquired the property and franchises and is burdened with the duties and obligations of the Brooklyn Union Elevated Railroad Company, a common carrier and corporation late of Kings County), a common carrier and corporation, failed to obey, observe and comply with" the order of the Public Service Commission of the State of New York for the First District, etc.

Upon the trial the defendant sought to prove that it was customary for the Commission to modify and abrogate its orders informally by failure to enforce their provisions; the individual statements of some of the Commissioners as to the scope and extent of the present order, and the individual directions given inspectors as to the procedure to be followed in checking the operation of the Fulton street express trains at Third street station and the hours within which such checking should be done; the individual statements of a Commissioner to inspectors as to the scope of the order, and other individual acts and statements of one or more members of the Commission.

The evidence was excluded upon the respondent's objections, and it is now contended such rulings present reversible error, the argument being that, in the absence of express direction in the statute as to the manner in which orders could be modified or abrogated, it was within the power of the Commission to adopt their own method of procedure, and that the evidence excluded was competent and material upon the question of whether or not, acting in their customary manner, the Commission had in fact modified or abrogated the order in part, and in such manner that it was only effective between the hours of eight and nine o'clock in the forenoon, and was

Second Department, December, 1917. [Vol. 180.

limited in its requirements to Fulton street express trains passing the Third street station during that hour.

This contention is without merit. It was the intention of the Legislature that an order should be without force or legal effect unless formally adopted and promulgated. The order itself provides the only manner in which it could be legally modified, changed or abrogated, viz., " By further order of the Commission; " and such is the plain holding in *People* v. *Whitridge, No. 1* (144 App. Div. 486; affd., 204 N. Y. 646).

If the question arose between the company and Commission in a legal proceeding to collect a penalty, the evidence might be competent as tending to establish an estoppel; but it is incompetent and immaterial in a criminal proceeding instituted and prosecuted by indictment.

The appellant contends that the act and procedure are judicial in their nature, and that the order, made after a full hearing, is the determination of a judicial proceeding, requiring proof that a copy was served upon him, or that he had actual knowledge of its requirements, at the time of its violation. In other words, that the agent of a railroad corporation is not chargeable with notice of an order of the Public Service Commission addressed to such corporation alone, and cannot be convicted for a violation of its provisions in the absence of proof, either of its service upon him, or of his actual knowledge of its existence and requirements at the time of the commission of the act claimed to constitute its violation. If appellant's contention was sound, it would not aid him, because he admits that he possessed the knowledge. He testified that he knew that the order was made, and that it required all the Fulton street express trains to stop at the Third street station, irrespective of the time of day when they passed that station, and that he acquired the knowledge immediately following the time when the order was made.

It was not necessary that a copy of the order should have been served on the defendant, even conceding that section 23 of the statute (as amd. by Laws of 1914, chap. 240) required such service, because he had knowledge of its contents, which was all that the statute contemplated.

The intent of the defendant is not material. Knowledge

or intent is no part of the offense. Violation itself constitutes the misdemeanor, irrespective of the intent or knowledge of the violator. The statute does not use any term of intention or knowledge, or make a conviction for the misdemeanor dependent upon the knowledge or intention of the violator.

As was said by the present presiding justice in *People* v. *Greenberg* (134 App. Div. 599): "The Legislature has seen fit to constitute the act itself the offense. If the statute seem severe in isolated cases, of which the one at bar may well be an example, if the uncontradicted contention of the defendant be true that he was deceived by the manufacturer, the courts have no powers of remission, limitation or multiplication in the face of the plain language of the statute."

It is further contended that the Commission later made a general order which had the legal effect of abrogating or repealing its former order, because of the physical impossibility of complying with the requirements of both.

The evidence to sustain this contention was not such as to require the trial court to hold, as matter of law, that the later order, because of its requirements, impliedly abrogated and repealed the former, either wholly or in part.

While the defendant's contention is sustained by his own testimony, and the opinion of an inspector that it would be " next to an impossibility " to comply with both orders (although he admitted that it was possible so to do), it appeared without contradiction that for nearly, or quite, three years both orders had been complied with between eight and nine o'clock each day, an hour in which the traffic on the Fifth avenue line was the greatest; and when it was ascertained that the order required similar stops at all other hours of the day in which a Fulton street express train was operated, the provisions of both orders were complied with, and the jury have found that it was possible to comply with both orders. There is a reason, however, why this judgment of conviction must be reversed.

Section 56 of the statute, fixing the penalty for a violation of an order of the Public Service Commission by common carriers, subdivision 2, as we have seen, provides that " Every officer and agent of any such common carrier or corporation who shall violate," etc. The defendant was not an officer

of the corporation; he was an employee charged with the operation of the trains under the direction of the vice-president and general manager, who gave him his instructions. Was it the legislative intent that such an employee should be chargeable with the consequences of the unlawful acts of the principal, in the case at bar the corporation or its officers? The defendant was an agent in the sense that every employee is an agent for the discharge of the duties within the sphere of his employment. He received his orders, and performed the duties of his position under the direction of the vice-president and general manager, who was the officer and agent within the meaning of the act. If we were to construe the legislative intent to be otherwise, the motorman and conductor of every train which failed to comply with this order would be liable to prosecution and conviction, and this without regard, as contended by the learned district attorney, as to whether they had ever heard of the order. That this was not the legislative intent is shown by section 58 relating to penalties for other than common carriers. Subdivision 2 provides: " Every person who, either individually or acting as an officer *or* agent of a corporation," etc. It will be noted that a person may be chargeable with the offense who is acting as the officer or agent, while in the section under consideration it is the officer and agent, which refers to the officer of the company who, acting for it, promulgates the schedule (in this case) and directs that it be put into operation.

It follows that the judgment of conviction of the County Court of Kings county must be reversed, and the indictment dismissed.

JENKS, P. J., PUTNAM and BLACKMAR, JJ., concurred; STAPLETON, J., concurred, and is also of opinion that it is essential to conviction to prove the service of notice as prescribed by section 23 of the Public Service Commissions Law.

Judgment of conviction of the County Court of Kings county reversed, and indictment dismissed.