# COURT OF APPEALS.

## July, 1918.

## THE PEOPLE v. JOHN DEMPSEY.

(224 N. Y. 140.)

TRIAL—ERRONEOUS CONVICTION OF CRIME OF FAILURE TO OBEY ORDER OF PUBLIC SERVICE COMMISSION.

The respondent was indicted, tried and convicted for a misdemeanor, for failure to comply with an order of the Public Service Commission, made under the statute (Cons. Laws, ch. 48, § 49, subd. 3) and with having aided and abetted a common carrier in its failure to obey said order. At the time the order was made the defendant was traffic superintendent of the carrier, acting under orders of the general manager of the company. The order in question was not served upon the defendant as the statute did not make such service necessary. It was essential, however, for the People to establish the order of the Commission, that the corporation had adopted measures to compel observance of the terms of the order by defendant, or that the defendant had actual knowledge of the order as finally agreed upon and with such knowledge exercised a choice to violate the same. Defendant cannot be held guilty of a violation of an order the definite terms of which were unknown to him, even if he did some act which was prohibited by the order.

SAME.

The court erroneously excluded material evidence sufficient to justify a reversal of the judgment tending to establish facts in connection with defendant's conduct between the date of the order and its alleged violation more than three years thereafter, the instructions received by him from his superiors, the knowledge of the Commission in relation to his conduct in the meantime, and its failure to act with reference thereto as bearing upon the question of knowledge by the defendant of the existence of the order in its final form and of any violation on his part.

SAME.

The demurrer to the indictment should have been sustained, as the same does not conform substantially to the requirements of sections 275, 276, 279 of the Code of Criminal Procedure.

(People v. Dempsey, 180 App. Div. 765, affirmed.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered

December 7, 1917, which reversed a judgment of the Kings County Court rendered upon a verdict convicting the defendant of the crime of failure to obey an order of the Public Service Commission, and directed a dismissal of the indictment.

The facts, so far as material, are stated in the opinion.

*Harry E. Lewis, District Attorney (Harry G. Anderson, Ralph E. Hemstreet* and *John E. Ruston* of counsel), for appellant.

The Appellate Division was in error in reversing the judgment below on the ground that the defendant was not such officer and agent as came within the legislative intent under the statute. (People v. Lytle, 7 App. Div. 553; People v. Butler, 125 App. Div. 384; People v. Rice, 138 N. Y. 151; Folmsbee v. Amsterdam, 142 N. Y. 118; Spencer v. Myers, 150 N. Y. 269; People v. Fredenberg, 209 N. Y. 218; Endlich on Interp. of Stat., §§ 303-305; Lewis' Sutherland Stat. Const. [2d ed.], § 397; People ex rel. Wood v. Lacombe, 99 N. Y. 43; Penal Law, §§ 27, 1936; People v. Clarke, 8 N. Y. Cr. Rep. 212; People v. Hammerstein, 155 App. Div. 204; 211 N. Y. 522.) The facts stated in the indictment constitute the crime charged, without alleging defendant's personal knowledge of the order or the service upon him personally of a copy. (People v. Webster, 17 Misc. Rep. 410; Hamilton v. People, 57 Barb. 625; Miller v. People, 5 Barb. 203; People v. Werner, 174 N. Y. 132; People v. Greenberg, 134 App. Div. 599; People v. Corey, 133 App. Div. 456; People v. Kibler, 106 N. Y. 321; People v. West, 106 N. Y. 293; People v. Jones, 54 Barb. 311; Gardner v. People, 62 N. Y. 299; Morris v. People, 3 Den. 381; People v. Eddy, 12 N. Y. Supp. 628; People v. Zeiger, 6 Park. Cr. Rep. 355.)

*Nathan L. Miller, Darius A. Marsh, Harold L. Warner* and *George D. Yeomans,* for the respondent.

The defendant was not an officer of a common carrier, railroad or street railroad corporation and, therefore, the statute upon which the prosecution was based did not apply to him. (Cons. Laws, ch. 48, § 56, subd. 2; Koch v. Fox, 71 App. Div. 288; Smith v. Farley, 155 App. Div. 813; People v. Whitridge, 144 App. Div. 486, 204 N. Y. 686; People v. Nelson, 153 N. Y. 90; People v. Rosenberg, 138 N. Y. 410; Rice v. United States, 53 Fed. Rep. 910.) The order of the Public Service Commission was not served on the defendant and, therefore, under section 23 of the Public Service Commissions Law he was not affected by the said order so as to be guilty of a misdemeanor in failing to comply with it. (People v. Whitridge, 114 App. Div. 486, 204 N. Y. 646.) It was not proved that the defendant had knowledge of the provisions of the order, at the time of the alleged violation, and without such knowledge he could not be guilty of a crime in not obeying it. (Martin v. Goldstein, 20 App. Div. 203; Gardner v. People, 62 N. Y. 299; People v. Eddy, 12 N. Y. Supp. 628; People v. Werner, 174 N. Y. 132; People v. Rix, 6 Mich. 144, 150; Birney v. State, 7 Ohio Rep. 230, 228; Commonwealth v. State, 7 B. Mon. 257; Davis v. Davis, 83 Hun, 500; Tebo v. Baker, 77 N. Y. 33; Matter of Smith, 15 N. Y. S. R. 733.)

HOGAN, J.:

The respondent was indicted, tried and convicted for a misdemeanor, for failure to obey, observe and comply with an order of the Public Service Commission made on the 6th day of February, 1912, and having aided and abetted a common carrier, the Brooklyn Union Elevated Company, in its failure to obey, observe and comply with said order. The crime was charged to have been committed May 19, 1915. A copy of the order made by the Public Service Commission was attached to and made part of the indictment, and so far as material is as follows:

" Ordered, that said Brooklyn Union Elevated Railroad Company be and it hereby is directed and required to stop all its 'Fulton Street Expresses' at the Third Street Station on its Fifth Avenue Elevated Line, and to permit passengers to board and alight from said trains at said stations. It is further

" Ordered, that this order shall take effect on the 12th day of February, 1912, and shall continue in force until changed or abrogated by further order of the Commission. It is further

" Ordered, that said Brooklyn Union Elevated Railroad Company notify this Commission on or before the 7th day of February, 1912, whether the terms of this order are accepted, and will be obeyed."

At the time the order was made the defendant was traffic superintendent of the carrier, acting under the orders of one Calderwood, vice-president and general manager of the company; that relationship continued until January 14, 1914, when Mr. Calderwood was succeeded by Mr. Huff, the defendant retaining the same position theretofore held by him. The order of the Commission was served by mail on the assistant secretary of the company on February 7, 1912.

According to the testimony of the defendant the order was not served on him and he did not see the same until after the alleged violation thereof. Upon receipt of the order, Mr. Calderwood informed defendant that the order required the stoppage of the express trains at the Third street station for more than the single hour between 8 and 9 o'clock in the morning. Defendant, who had attended the hearing before the Commission, wrote Mr. Calderwood that the evidence on the hearing before the Commission related only to the time between 8 and 9 o'clock in the morning and stated that it was probable some error had been committed in the requirements of the order. Mr. Calderwood thereupon addressed a letter to the Commission, calling attention to the broad scope of the order, and that the testimony before the Commission indicated that the period of time under discus-

sion there had reference only to the hours of the morning from 8 to 9 o'clock, and requested an extension of time to February 23d to complete investigation, which extension was granted by the Commission and the defendant was informed of such facts by Mr. Calderwood.

On February 21st, defendant, pursuant to instructions from Mr. Calderwood and in the belief that the order had been modified, issued an order to have the express trains stop at the station between 8 and 9 o'clock in the morning; thereafter and for a period of three years down to the date of the institution of this prosecution, on the 19th day of May, 1915, express trains stopped at the station during the hours stated. Express trains during that time were operated between the hours of 7 and 9 o'clock in the morning. That the Commission had notice of the fact that the stops were made only between the hours of 8 and 9 o'clock appears from the testimony of a witness called by the defendant, one of the inspectors of the Commission, who testified in effect that he was directed by the Commission during the three years and upwards intervening between the date of the order and institution of the prosecution to check up and report as to the stoppage of express trains at the station between the hours of 8 and 9 o'clock in the morning; that he complied with the instructions given him and not until May, 1915, about the date of the alleged violation, did he receive instructions to check up stoppage of trains between 7 and 8 o'clock in the morning. A further fact appears in the record, that on January 25, 1913, the Commission addressed a letter to Mr. Calderwood, wherein amongst other cases reference was made to the order in question as requiring express trains to stop " during rush hours."

Upon appeal from a judgment of conviction, the Appellate Division reversed the judgment and dismissed the indictment, holding in effect that the defendant was only an employee subject to instructions of the vice-president and general manager, and in the general acceptation of the term an agent of the com-

pany; that it was not the legislative intent that such employee should be chargeable with the consequences of the unlawful acts of the principal, the corporation or its officers; that the statute provides that a person may be chargeable with the offense who is acting as the *officer and agent* of the corporation, and that this refers to the officer of the company who acting for it promulgates the schedule and directs that it be put in operation.

The authority of the Public Service Commission to make an order like the one in the case at bar must be found in subdivision 2, section 49, article 3 of the statute (Cons. Laws, ch. 48), which provides in substance that the Commission whenever it shall be of opinion, after a hearing had, that the service of a common carrier, railroad corporation or street railroad corporation in respect to transportation of persons is unjust or inadequate shall determine the just and adequate service therefor to be enforced and to be observed in such transportation of persons and to prescribe the same by order " to be served upon every common carrier, railroad corporation and street railroad corporation to be bound thereby; and thereafter it shall be the duty of every common carrier, railroad corporation and street railroad corporation to observe and obey each and every requirement of every such order so served upon it, and to do everything necessary or proper in order to secure absolute compliance with and observance of every such order by all of its officers, agents and employees."

That section must be read in connection with section 56 under which the prosecution at bar was instituted. Section 49 required the corporation to observe and obey the order of the Commission and to require observance of the same by its officers, agents and employees. Upon receipt of the order by the corporation a duty was imposed upon it to promulgate the same to such of its officers, agents and employees upon whom by reason of their position and authority a duty would be imposed to promulgate orders to subordinates in their several departments to the end that the order of the Commission should be observed.

The term " officer and agent " as used in section 56 should receive a like construction and thus interpreted would require a superintendent of traffic, upon receiving instructions from his superior officer, to discharge the duty incumbent upon him, to take such action as may be necessary to carry into effect the order given to him by the corporation.

Section 23 of the statute is not applicable to the present case. The noted section will be found under the article " general provisions " and that section affects two separate classes, one a *person* affected by the order, two, a *corporation* affected by the order. The notice required under this section is actual notice, *i. e.*, service of a certified copy of the order. A *person* contemplated by this section as one affected by the order is a person against whom the order is made and whose conduct is to be controlled thereby, such as persons owning, leasing or operating railroads, street railroads, gas and electric plants, heat and power plants or telephone lines over whom supervision and power is granted to the Commission by the language of section 5 of the statute.

The order in question was not served upon the defendant as the statute did not make such service necessary. It was essential, however, for the People to establish the order of the Commission, that the corporation had adopted measures to compel observance of the terms of the order by defendant, or that the defendant had actual knowledge of the order as finally agreed upon and with such knowledge of the order as finally agreed upon and with such knowledge exercised a choice to violate the same. It could not be seriously argued that defendant could be held guilty of a violation of an order the definite terms of which were unknown to him, even if he did some act which was prohibited by the order.

In People v. Whitridge (144 App. Div. 486; affirmed, 204 N. Y. 646) an action was brought by the People to recover

penalties in a large amount under subdivision 1 of section 56 of the Public Service Commissions Law for the failure of the Union Railway Company and the defendant as receiver of the railway company to obey an order of the Public Service Commission. In that case Justice Scott, writing for a unanimous court in the Appellate Division, referred to the section of law in question under consideration here, and said:

"The section under which this action is brought is highly penal. It is intended to punish common carriers or corporations for failure, omission or neglect to obey an order of the commission. The purpose is to prevent *intentional, deliberate* and avoidable disobedience, and it will not be extended in cases of failure to obey which are involuntary and unavoidable, and it must always be open to a defendant, when prosecuted for penalties under the act, to show that the failure to obey was due to no fault of his own, but resulted from causes beyond his control. Undoubtedly proof of the fact of the failure to obey establishes culpability *prima facie,* and casts upon the defendant the onus of excusing his apparent default. When he has produced evidence in that regard which, if true, furnishes a complete excuse and explanation, and it is not questioned or contradicted, there is nothing left for the jury to consider." (P. 491.)

Under the circumstances of this case it was perfecttly proper for the defendant to establish the facts which have been referred to in the course of this opinion and in addition thereto he was entitled to establish facts in connection with his conduct between the date of the order and alleged violation of the same, the instructions received by him from his superiors, the reports made by the corporation to the commission relating to or bearing upon the stoppage of trains at Third street, the hours at which express trains were stopped there during the morning, the knowledge of the Commission thereof and the absence of criticism by the commissioners in relation to such conduct and, in the event of an approval of the same to establish that fact, as well as conver-

sations with the commissioners relating to the action of the corporation in relation to the subject of express trains or appertaining thereto, or any acts on the part of the Commission charged with the enforcement of the order bearing upon the manner in which the same was treated by the Commission and their knowledge of the manner in which the corporation and defendant were acting in relation thereto as bearing upon the question of knowledge by the defendant of the existence of the order in its final form and of any violation on his part. The exclusion of such evidence was material error, in itself sufficient to justify the reversal of the judgment.

The errors pointed out render it necessary to consider exceptions taken to portions of the charge of the trial justice.

We are of opinion also that the demurrer to the indictment should have been sustained, as the same does not conform substantially to the requirements of sections 275, 276, 279 of the Code of Criminal Procedure. (People v. Dumar, 106 N. Y. 502; People v. Corbalis, 178 N. Y. 516.)

For the reasons stated the judgment of the Appellate Division should be affirmed.

HISCOCK, Ch. J., COLLIN and ANDREWS, JJ., concur; CARDOZO, POUND and CRANE, JJ., vote to modify judgment of Appellate Division by providing for granting a new trial instead of dismissing indictment.

Judgment affirmed.